**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals
### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted September 18, 2023[*]
Decided October 10, 2023

CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

**Before**

DIANE P. WOOD, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

DORIS L. PRYOR, *Circuit Judge*

Nos. 23-1045, 23-1046, 23-1047, & 23-1048

| | |
|---|---|
| IN RE: MICHAEL WOLF,<br>*Debtor*, | Appeals from the United States District Court for the Northern District of Illinois, Eastern Division. |
| N. NEVILLE REID, not individually, but solely in his capacity as Chapter 7 Trustee for the bankruptcy estate of Michael A. Wolf,<br>*Plaintiff-Appellee*,<br><br>*v.*<br><br>SCOTT WOLF and MICHAEL WOLF,<br>*Defendants-Appellants*. | Nos. 18 CV 07952, 18 CV 07953, 19 CV 01978 & 19 CV 08154<br><br>John J. Tharp, Jr.,<br>*Judge*. |

---

[*] We have agreed to decide the appeals without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Case: 1:19-cv-01978 Document #: 80 Filed: 11/21/23 Page 2 of 7 PageID #:1496
Case: 23-1045    Document: 00714294453    Filed: 11/21/2023    Pages: 7

Nos. 23-1045, 23-1046, 23-1047, & 23-1048                                                    Page  2

**O R D E R**

Facing mounting debt and an impending divorce, Michael Wolf endeavored to shield his trade publication, Monday Morning Quarterback (MMQB or "the business"), from which he derived great wealth, from his creditors. He enlisted the help of his son, Scott Wolf, and the two transferred the business to an entity that Scott owned. The trustee overseeing Michael's Chapter 7 bankruptcy secured a $2.1 million judgment against him and Scott for a fraudulent transfer. The district court affirmed the bankruptcy court's judgment, rejecting the Wolfs' challenges to the outcomes of several adversarial actions brought by the trustee. We affirm the decision.

The bankruptcy court entered a default judgment against Michael Wolf and Scott Wolf[1] in the adversarial actions, so we accept the factual allegations in the trustee's pleadings as true and briefly recount them. See *Wehrs v. Wells*, 688 F.3d 886, 888 (7th Cir. 2012). Michael Wolf runs MMQB, a trade publication for the commercial furniture industry. He and his sons, Scott and Peter, drew considerable salaries and paid personal debts from the magazine's income, which exceeded $1 million in some years.

Michael and his wife, Elizabeth, separated in 2011, and, anticipating divorce, he schemed to shield his ownership stake in MMQB from the marital estate. At the time of the separation, Michael owned MMQB in its entirety through another of his companies Zig-Zag Corp. (Zig-Zag), an Illinois corporation. Michael and Scott made three primary moves to transfer ownership of MMQB to Scott. First, Michael transferred MMQB from Zig-Zag to a new entity, ZZC, Inc., for no consideration and without a written agreement. Second, Michael gave a majority of ZZC's stock to Scott and kept the rest for himself. Third, Scott transferred MMQB from ZZC to MMQB, Inc., an entity that Scott wholly owned. After all this, the business continued as usual: Michael and both sons ran MMQB and drew salaries from it.

When Elizabeth initiated divorce proceedings in Illinois, Michael told the divorce court that he had no assets or income. He stated that Scott had fired him from MMQB and that he (Michael) had never owned ZZC, which owned MMQB at that time. In fact, Michael then controlled 49% of shares in ZZC.

---

[1] Because several people involved in the case share the same last name, we refer to each of them by first name.

The divorce court ordered Michael to sell his Aston Martin and make temporary maintenance payments to Elizabeth with the proceeds of that sale. When he instead sold the Aston Martin to Scott in a sham transaction and continued using the car himself, the court held Michael in contempt and ordered him to pay Elizabeth or go to jail. Instead, Michael filed for bankruptcy under Chapter 7. At the time of filing, he owed more than $1 million to various personal creditors, including Elizabeth.

The divorce court later entered an order dissolving the marriage and awarding the entire marital estate to Elizabeth. The marital property included Michael's minority stake in ZZC—but his stake in that entity had become worthless when he transferred MMQB (the only asset) to Scott.

Back in bankruptcy court, the trustee filed a complaint initiating an adversarial action (later severed into multiple actions) to avoid Michael and Scott's transfers and retain Michael's assets for his creditors. Michael and Scott failed to respond to these proceedings, and the bankruptcy court entered clerical default against them. The trustee then produced evidence that MMQB was valued at $2.1 million, and the bankruptcy court approved default judgments against Michael, Scott, and their various corporate entities in that amount. The bankruptcy court also denied Michael's petition to discharge various personal debts and Michael and Scott's request for costs and fees in an adversarial action against both of them that the trustee had voluntarily dismissed.

Michael and Scott then appealed the default judgments and the denial of the discharge petition to the district court, which affirmed in all material respects. It rejected Michael and Scott's primary argument: that the trustee could not avoid the fraudulent transfers because the divorce court ultimately awarded the entire marital estate to Elizabeth and it was she, therefore, who fully owned MMQB. The district court reasoned that the trustee had the power to maximize the value of the bankruptcy estate by avoiding fraudulent transactions and that he could bring an action on behalf of the creditors, including Elizabeth.

The district court also rejected Michael and Scott's argument that the bankruptcy court improperly allowed the trustees to reverse-pierce the corporate veil and use MMQB's funds to pay off Michael's personal creditors. The district court concluded that Illinois law permits this type of veil-piercing. Michael also challenged the bankruptcy court's denial of his discharge petition and his and Scott's request for costs, but again the district court affirmed the bankruptcy judge's rulings.

Case: 1:19-cv-01978 Document #: 80 Filed: 11/21/23 Page 4 of 7 PageID #:1498
Case: 23-1045      Document: 00714294453      Filed: 11/21/2023      Pages: 7

Nos. 23-1045, 23-1046, 23-1047, & 23-1048                                                    Page  4

Michael and Scott then moved for reconsideration. They argued a hypothetical: if the fraudulent transfers had not occurred, the MMQB assets still would not have been part of the bankruptcy estate because they would belong to Elizabeth. The district court declined to predict what the family court judge would have done under different circumstances, and it rejected the argument.

In this appeal, Michael and Scott raise four challenges to the district court's rulings, each of which we review de novo.[2] *In re Thorpe*, 881 F.3d 536, 539 (7th Cir. 2018). First, relying on *Thorpe*, they repeat their argument that the trustee cannot bring the fraudulent transfer claims because the divorce court awarded the entire marital estate to Elizabeth, who therefore owned the business in full as of the time she filed for divorce. See *id.* at 540. And because Michael filed for bankruptcy *after* Elizabeth filed for divorce, they contend, the assets they transferred are beyond the reach of the bankruptcy estate.

This argument misapplies Illinois divorce law, the bankruptcy code, and our case law. As the district court explained, the Illinois Dissolution of Marriage Act provides that spouses own a contingent interest in all marital property, and their interests vest at the time of the divorce petition. 750 ILCS 5/503(e); *Thorpe*, 881 F.3d at 540. When the marital property is divided, each party's contingent interest either "ripens into a full ownership interest" or vanishes. *Id.* Thus, when Elizabeth filed the divorce petition, each spouse had a contingent interest in the MMQB business. And when Michael then filed for bankruptcy, the bankruptcy estate consisted of all property Michael owned at the time, see *id.* at 539, which included his contingent interest in all marital property.

Michael and Scott's contrary argument is speculative. They suppose that if MMQB were never transferred to Scott, the divorce court still would have awarded the entire marital estate, including MMQB, to Elizabeth, and so it never would have been

---

[2] We ordered Michael and Scott to file combined briefs. Dkt. 20, (Mar. 20, 2023). But because they are each pro se litigants, neither can represent anyone other than himself. See *Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 830 (7th Cir. 1986). That means each must sign the appellants' briefs, and indeed, both signed the opening brief. But Michael did not sign the reply brief or otherwise adopt the brief that appears to be authored by Scott. Still, the brief was submitted using Michael's CM/ECF account. Using a unique e-filing account serves as a signature for purposes of Federal Rule of Appellate Procedure 32(d). See 7TH CIR. ELEC. CASE FILING PROC. (j)(1) (revd. Jan. 19, 2021).

Case: 1:19-cv-01978 Document #: 80 Filed: 11/21/23 Page 5 of 7 PageID #:1499
Case: 23-1045   Document: 00714294453   Filed: 11/21/2023   Pages: 7

Nos. 23-1045, 23-1046, 23-1047, & 23-1048                              Page 5

part of Michael's personal bankruptcy estate. But the trustee may avoid the transfer of any property in which the debtor has an interest, even a prior interest, if the transfer was fraudulent. See 11 U.S.C. §§ 541, 548(a)(1)(A); *In re Great Lakes Quick Lube LP*, 816 F.3d 482, 485 (7th Cir. 2016) (creditors may reclaim value of terminated leases after fraudulent transfer). The MMQB business left the marital estate only because of Michael and Scott's fraudulent transfers, and they may not now assert that the business lies outside the bankruptcy estate because it was Elizabeth's property.

And even if the creditors could not directly access Michael's contingent interest in MMQB's assets because of decisions in the divorce case, the trustee had the power to undo the fraudulent conveyances to maximize the value of the bankruptcy estate. A bankruptcy trustee, on behalf of any creditor, may deploy strong-arm powers to undo fraudulent conveyances so long as (1) there is a true creditor, and (2) the transaction would be voidable under state law. 11 U.S.C. § 544(b)(1); *In re Chi. Mgmt. Consulting Grp., Inc.*, 929 F.3d 803, 811 (7th Cir. 2019). The first requirement is met because Elizabeth was an existing creditor: she filed a claim in the bankruptcy case for unpaid attorneys' fees and maintenance payments from the divorce case. Elizabeth also holds a surplus claim to the bankruptcy estate's leftover assets because the divorce court assigned her the entire marital estate. Therefore, any MMQB assets remaining after payment of all administrative expenses and creditor claims would go to her. See 11 U.S.C. § 726(a)(6). As for the second prong, the transfers are voidable under Illinois law. The bankruptcy court concluded, and we agree, that Michael transferred the business to Scott for no value and in bad faith; the transaction is thus voidable under Illinois law. See 740 ILCS 160/9(a); 11 U.S.C. § 548(c).

Further, Michael and Scott's reliance on *Thorpe* is inapt. Though *Thorpe* also concerned whether certain marital property belonging to the non-debtor spouse belonged in a bankruptcy estate, the *Thorpe* trustee waived any argument about her strong-arm power. 881 F.3d at 539, 542. We noted, however, that this power remains a "robust tool" to enlarge and protect value for creditors. *Id.* at 542. The trustee here did not waive a strong-arm argument, and nothing we said in *Thorpe* would prohibit the trustee from reclaiming MMQB assets for the estate after the fraudulent transfer.

The second issue on appeal is whether, as Michael and Scott argue, the bankruptcy court erred under Illinois law by allowing the trustee to pierce the corporate veil of Zig-Zag on an alter ego theory. Michael wholly owned Zig-Zag, spent its income as his own, and sought to avoid paying his debts by having Zig-Zag transfer MMQB to Scott's company. Therefore, Zig-Zag was Michael's alter ego, and veil-piercing was

Case: 1:19-cv-01978 Document #: 80 Filed: 11/21/23 Page 6 of 7 PageID #:1500
Case: 23-1045     Document: 00714294453     Filed: 11/21/2023     Pages: 7

Nos. 23-1045, 23-1046, 23-1047, & 23-1048                                           Page  6

proper. See *Main Bank of Chi. v. Baker*, 427 N.E.2d 94, 101 (Ill. 1981); *Sea-Land Servs., Inc. v. Pepper Source*, 941 F.2d 519, 520 (7th Cir. 1991).

Next, Michael and Scott all but abandon the arguments they raised in the district court to the effect that the trustee cannot pierce the corporate veil to reach the assets of ZZC and MMQB, Inc. (the companies that took ownership of MMQB) to pay Michael's personal debts. We could rightly consider these arguments waived because they are not developed. See *Estate of Wattar v. Fox*, 71 F.4th 547, 554 (7th Cir. 2023). Nevertheless, because we can discern the gist of their contentions, and we liberally construe the filings of pro se litigants, we briefly address the merits, as is our preference.[3] *Id.*

Generally, veil-piercing allows a corporation's creditors to reach the *owner's* personal assets when the owner completely disregards corporate formalities such that it would be inequitable to sustain the fiction of separate personhood for corporations. *Scholes v. Lehmann*, 56 F.3d 750, 758 (7th Cir. 1995). This case involves "reverse veil-piercing," when creditors of the corporation's owner seek to reach the *corporation's* assets. *Id.*; see also WILLIAM MEADE FLETCHER ET AL., 1 FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 41.70 (rev. vol. 2022). Reverse veil-piercing takes two forms. Inside reverse veil-piercing—reaching corporate assets for the benefit of a corporate insider—is barred in Illinois. See *Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227, 241 (Ill. 2007); *In re Rehab. of Centaur Ins. Co.*, 632 N.E.2d 1015, 1018 (Ill. 1994). This case concerns *outside* reverse veil-piercing, which is when third-party creditors (here, Michael's Chapter 7 creditors, via the trustee) seek to satisfy the business owner's personal debt with business assets. See 1 FLETCHER CYC. CORP. § 41.70. Its validity remains an open question in Illinois.

We agree with the district court that Illinois law likely permits outside reverse veil-piercing because, for equitable reasons, Illinois courts have approved of veil-

---

[3] The district court concluded (and we agree) that Michael and Scott waived any challenge to the veil-piercing claims against the other two entities used in the scheme—ZZC, Inc. and MMQB, Inc.—by not timely raising the argument. And Michael and Scott do not raise any arguments about Delaware law on appeal. (ZZC is either a Delaware or Illinois corporation, and MMQB, Inc. is a Delaware corporation.) So only Illinois law is at issue. We suspect, but do not decide, that Delaware courts would rule in line with what we understand to be Illinois law. See *Crystallex Int'l Corp. v. Petróleos De Venezuela, S.A.*, 879 F.3d 79, 86 (3rd Cir. 2018) (predicting that Delaware law would permit reverse veil-piercing but concluding the plaintiff did not plead facts justifying veil-piercing).

piercing claims that do not flow in the traditional direction. See *Main Bank of Chi.*, 427 N.E.2d at 101–02 (stating that either subsidiary or parent corporation may be liable for the actions of the other when justice requires); *Crum v. Krol*, 425 N.E.2d 1081, 1088–89 (Ill. App. Ct. 1981) (individual could pierce own company's corporate veil to recover from defendant in contract case). And we have previously concluded that Illinois law would endorse outside reverse veil-piercing. See *Scholes*, 56 F.3d at 758 (allowing trustee to pierce veil of corporations solely controlled by Ponzi schemer); *Sea-Land Servs., Inc*, 941 F.2d at 524–25 (endorsing outside reverse veil-piercing claim but remanding for want of evidence of injustice). We see no reason to deviate from these decisions; if the Illinois Supreme Court—or the legislature—disagreed, we would have expected a signal in the many years since. See *Wesbrook v. Ulrich*, 840 F.3d 388, 399 (7th Cir. 2016).

As the third issue on appeal, Michael argues that the bankruptcy court should have granted his discharge petition, but the bankruptcy court did not err. A bankruptcy court may deny a discharge petition if, among other reasons, the debtor intends to "hinder, delay, or defraud a creditor" by concealing any property, 11 U.S.C. § 727(a)(2)(A), or if the debtor knowingly makes a false statement in connection with the case. *Id.* § 727(a)(4)(A). Michael did both: he executed a sham sale of his Aston Martin to his son to avoid making payments to Elizabeth, a creditor. And Michael falsely testified in the bankruptcy case that he had always owned only a minority share in ZZC, Inc., (though he had told the divorce court he had no share), but he had been its sole owner before he gave majority ownership to Scott for free.

Lastly, Michael and Scott assert that they are prevailing parties entitled to their costs and fees in an adversarial claim that the trustee brought and then voluntarily dismissed. But, in the district court, the Wolfs offered no argument in support of that contention, only a single citation without explanation. Thus, they waived this argument. *Estate of Wattar*, 71 F.4th at 554. In any event, the trustee's voluntary dismissal of one claim did not terminate a substantial part of the litigation—a requirement for getting costs as a prevailing party under Federal Rule of Civil Procedure 54(d)(1). FED. R. BANKR. P. 7054(b); see *also Baker v. Lindgren*, 856 F.3d 498, 502 (7th Cir. 2017). Here, the trustee secured default judgments against Michael and Scott on almost every other claim he brought. Michael and Scott therefore did not "prevail," and the bankruptcy court did not abuse its discretion by denying costs and fees. See *id*.

AFFIRMED