# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
|     Michael A. Wolf, | ) | |
| | ) | |
|         Debtor. | ) | Nos. ~~18 cv 07952~~, ~~18 cv 07953~~, |
| | ) | 19 cv 1978, ~~19 cv 8154 and 19 cv 8299~~ |
| | ) | |
| N. Neville Reid, not individually, | ) | |
| but solely in his capacity as Chapter 7 | ) | |
| Trustee for the bankruptcy estate of | ) | |
| Michael A. Wolf | ) | |
| | ) | (Bankruptcy Case No. 14 B 27066) |
|         Plaintiff, | ) | |
|     v. | ) | |
| | ) | |
| MMQB, Inc. Michael Wolf, | ) | |
| Scott Wolf, et al | ) | |
|         Defendants. | ) | |

### ALIAS CITATION TO DISCOVER ASSETS TO MICHAEL WOLF

To Third Party:    Michael Wolf
                              320 Central Ave., Unit 141
                              Sarasota, Florida 34236

**YOU ARE COMMANDED** to appear remotely via audio-video conference, Zoom Meeting Information:

https://us06web.zoom.us/j/89490464550?pwd=U0NpVGc0ZTJrc1RPMHpqREFQQURJQT09

    Meeting ID: 894 9046 4550
    Passcode: 123290

on **April 28, 2023 at 10:00 a.m. Central Time** to be examined under oath, to discover assets or income not exempt from enforcement of a judgment, which examination shall be recorded by stenographic means before an officer authorized to administer oaths.

**IF YOU FAIL TO APPEAR AS DIRECTED IN THIS NOTICE, YOU MAY BE ARRESTED AND BROUGHT BEFORE THE COURT TO ANSWER TO A CHARGE OF CONTEMPT OF COURT, WHICH MAY BE PUNISHABLE BY IMPRISONMENT.**

On October 27, 2022, a judgment in the amount of $2,100,000 was entered in the United States District Court for the Northern District of Illinois, in favor of N. Neville Reid, not individually but in his capacity as Chapter 7 Trustee for the bankruptcy estate of Michael A. Wolf against MMQB, Inc. and $2,100,000 of the judgment remains unsatisfied. A copy of the judgment entered on October 27, 2022 is attached hereto as Exhibit 1.

**YOU ARE ALSO COMMANDED** to produce at the examination all books, papers or records in your possession or control which may contain information concerning the property or income of, or indebtedness of the Judgment Debtor. You are further required to produce the documents and answer the interrogatories that are included in the attached Rider.

**YOU ARE PROHIBITED** from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution of garnishment belonging to the Judgment Debtor or to which the Judgment Debtor may be entitled or which may be acquired by or become due to the Judgment Debtor and from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to the Judgment Debtor, until further order of court or termination of the proceedings. You are not required to withhold the payment of any money beyond double the amount of the judgment.

Neville Reid, not individually but in his capacity as Chapter 7 Trustee for the bankruptcy estate of Michael A. Wolf

By: _____
One of his Attorneys

4/7/2023
Date

_____
Deputy Clerk of the U.S. District Court

2

**CERTIFICATE OF ATTORNEY**

On October 27, 2022, a judgment in the amount of $2,100,000 was entered in the United States District Court for the Northern District of Illinois, in favor of N. Neville Reid, not individually but in his capacity as Chapter 7 Trustee for the bankruptcy estate of Michael A. Wolf against MMQB, Inc. and $2,100,000 of the judgment remains unsatisfied.

I, the undersigned, declare under penalty of perjury as provided by law that the information stated herein is true.

04/07/2023
Date

*[signature: Daniel P. Dawson]*

Daniel P. Dawson (ARDC# 6199728)
Nisen & Elliott, LLC
180 N. LaSalle Street, Suite 3600
Chicago, Illinois 60601
(312) 346-7800

3

# RIDER
## TO CITATION TO DISCOVER ASSETS

The judgment-plaintiff, for its Rider to the Citation to Discover Assets directed to the respondent, states as follows:

## DEFINITIONS

As used herein:

1. The term "this matter" refers to the above captioned matter.

2. The term "Relevant Period" means from July 23, 2012 to the present.

3. The term "Citation" refers to the Citation to Discover Assets.

4. This Rider to the Citation includes requests for all documents and records in the actual or constructive possession, custody or control of the Respondent.

5. The term "Respondent" shall refer to Michael Wolf and any person or entity acting on behalf of him.

6. The term "Judgment Debtor" shall refer to MMQB, Inc. and any person or entity acting on behalf of it.

7. The term "Plaintiff" shall refer to N. Neville Reid, not individually but in his capacity as Chapter 7 Trustee for the bankruptcy estate of Michael A. Wolf.

8. The term "Person" means any natural person or entity, including, without limitation, any individual, firm, corporation, company, association, partnership, business, public agency, department, bureau, board, commission, or any other form of public, private or legal entity.

9. The term "document" or "documents" is synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure and includes, but is not limited to, any and all papers, photographs, films, recordings, memoranda, books, records, accounts, communications, and all retrievable information in computer storage and other electronically stored information ("ESI") including but limited to e-mails, texts, documents, files, reports, correspondence, summaries, stenography or handwritten notes, announcements, drafts, and preliminary copies of documents, transcripts, minutes, studies, memoranda, notes or memoranda of conversations, telephone messages, transmittal slips, printed literature, brochures, catalogues, advertising of all types, test reports, articles, publications, books, pamphlets, pictures, diaries, appointment books, calendars, minute books, by-laws, statistical compilations, telegrams, telexes, cables, teletypes, mailgrams, facsimiles, graphs, charts, surveys, analyses, compilations, movie films, audiotapes, microfilms, slides, or still films, statistics, data processing cards, computer records, computer tapes, printouts, books of account,

ledgers, journals, spread sheets, control sheets, working papers, audits or any writing or documentation or data of any kind or description, whether handwritten, typewritten, printed, copied, microfilmed, printed on computer cards or tapes or data in existence or available or otherwise retrievable of every type and description, regardless of form or nature, relating in whole or part, directly or indirectly, to the documents and information requested.

10. "Communication" shall be used in the broadest sense and includes any oral, written, and electronic communications including any transmission of words or information between or among two or more persons and includes, but is not limited to, spoken words, conversations, conferences, discussions, talks, and reports, whether transmitted in person or by any electronic device such as telephone, radio, facsimile, computer, and documents as defined above . To the extent You object to the production of e-mail or any electronically stored information ("ESI") as burdensome or intend to seek any costs associated with your compliance, you must contact Daniel P. Dawson at ddawson@nisen.com or call (312) 346-7800 *before you incur any costs* in order to discuss any such request.

11. The terms "file or files" and "document, documents or documentation" as used herein includes, unless specified to the contrary, the original where it is available or otherwise a carbon copy, photostatic copy or other copy in whatever form the data is preserved. It also includes computer printouts and microfilm and other sources preserving the requested information including any and all secondary or alternative sources of said requested information. Please produce for each and every item produced any and all copies that are not identical copies of that which is to be produced or where a copy contains any commentary or notation whatsoever thereon which does not appear on the copy or copies to be produced. Please also produce any and all preliminary copies or draft of the documents to be produced.

12. "Relating to" means containing, constituting, showing, mentioning, reflecting or pertaining or referring in any way, directly or indirectly, to and is meant to include, among other documents, documents underlying, supporting, now or previously attached or appended to, or used in the preparation of any document called for by each request in the Rider.

13. "Pertain to," "pertaining to," and "concerning" mean referring to, reflecting, or to be related in any manner logically, factually, indirectly, or directly to the matter discussed.

14. "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary so as to bring within the scope of this Rider any matter which would otherwise be construed to be outside the scope of this Rider.

15. "Control" means actual possession, constructive possession, beneficially owing, power to obtain, and ability to obtain any document.

16. "Representative" used with reference to a person means (a) officers, directors, partners, associates, employees, servants, agents, subsidiaries and affiliates of such person; and (b) other persons or legal or business entities action on behalf of, or in concert with, such person including, without limitation, lobbyists, management consultants, investment bankers, financial advisers, lawyers, accountants and any other persons of any description which the Judgment Debtor has retained or employed or retains or employs for business, financial or political reasons

5

of any kind.

17. "Identify" when used in reference to a person means to state its full name, its present (or last known) address, and its present (or last known) telephone number and e-mail address(es).

18. "Identify" when used in reference to a business or entity means to state its full name, its present (or last known) address, its present (or last known) telephone number and e-mail address(es), and its legal status (i.e. corporation, partnership, sole proprietorship, and so forth); if a corporation, then its State of incorporation; if a partnership, the type of partnership and State of registration is required.

19. "Identify" when used in reference to a document, means to state: (a) its date; (b) its subject and its substance; (c) its author; (d) its recipients; and (e) the type of document (e.g., letter, memorandum, telegram, chart, computer input or printout, photograph, sound reproduction, etc.) or if the above information is not available, some other means of identifying it and its present location and the name of each of its present custodians; and if any such document was, but is no longer, in the Respondent's possession or subject to the Respondent's control, or in existence, state whether it is: (i) missing or lost; (ii) has been destroyed; (iii) has been transferred, voluntarily or involuntarily, to others; or (iv) otherwise disposed of; and in each instance, explain the circumstances surrounding the authorization for disposition thereof and state the date or approximate date thereof. In addition, if Respondent claims any privileges (including work-product) when identifying a document, state the basis upon which the claim of privilege is made.

20. The masculine includes the feminine and the feminine includes the masculine, except where circumstances clearly make it inappropriate.

21. The singular includes the plural and the plural includes the singular, except where circumstances clearly make it inappropriate.

22. The use of any tense of any verb includes all other tenses of the verb so used, except where circumstances clearly make it inappropriate.

23. All retrievable information in computer storage shall be produced in printed form.

## INSTRUCTIONS

1. Unless otherwise indicated, the documents covered by this Rider shall include all documents from July 23, 2012 to the date this Citation was served (i.e. the "Relevant Period").

2. In producing documents, the respondent shall produce them as maintained in the ordinary course of business and shall organize or label them to correspond to the categories in this Rider.

3. If the Respondent withholds any documents covered by this Rider by reason of a claim of privilege, a list is to be furnished identifying each such document for which the privilege is claimed together with the following information: (a) the date of the document; (b) the name of its author or preparer and an identification by employment and title of each such person; (c) the name of each person who was sent or furnished with the document or received, viewed or has had custody of the document, together with an identification of each such person; (d) a brief description of the document; (e) a statement of the basis for the claim of privilege; and (f) the paragraph of this Rider to which the document relates. In the case of any document relating in any way to a meeting or to any other conversation, all participants in the meeting or conversation are to be identified.

4. If any document responsive to this Rider has been but is no longer in Respondent's possession, custody, or control because it has been discarded or destroyed, that document is to be identified as follows: addressor, addressee, indicated or blind copies, date, subject matter, number of pages, attachments or appendices, all persons to whom distributed, shown or explained, date of disposal or destruction, persons authorizing disposal or destruction and persons discarding or destroying the document.

## DOCUMENTS REQUESTED

The Definitions and Instructions set forth herein are expressly incorporated by reference and made a part of each of the following document Requests.

**Request No. 1:** All documents in support of and identified in the Interrogatories set forth below;

**Request No. 2:** The bank books for all accounts held in the name, or for the benefit, of the Judgment Debtor and any person or entity succeeding the Judgment Debtor as publisher of the Monday Morning Quarterback including "the latest MMQB Issues" identified on the website located at "MMQB.io" (i.e. its "Successor Entity");

**Request No. 3:** The monthly account statements for all accounts held in the name of, or for the benefit of, the Judgment Debtor or its Successor Entity, including the front and back of all checks;

**Request No. 4:** All federal and state tax returns filed by the Judgment Debtor or its Successor Entity during the Relevant Period including all schedules, statements, worksheets, W-2's, K-1's, and all other attachments;

**Request No. 5:** All deeds or other evidence of title for all real estate owned in the name, or for the benefit, of the Judgment Debtor or its Successor Entity;

**Request No. 6:** All declarations of trusts related to the Judgment Debtor or its Successor Entity;

**Request No. 7:** All documents relating to any safety deposit boxes held in the name, or for the benefit, of the Judgment Debtor or its Successor Entity;

**Request No. 8:** All promissory notes, drafts, bills of exchange, or other commercial paper related to the Judgment Debtor or its Successor Entity;

**Request No. 9:** All loan documents related to the Judgment Debtor or its Successor Entity;

**Request No. 10:** All documents related to the assets of the Judgment Debtor or its Successor Entity during the Relevant Period;

**Request No. 11:** All documents related to any securities held in the name, or for the benefit, of the Judgment Debtor or its Successor Entity;

**Request No. 12:** All documents related to the acquisition, holding or disposition of any assets of the Judgment Debtor or its Successor Entity during the Relevant Period;

8

**Request No. 13:** All documents reflecting income, including interest or investment income, related to the Judgment Debtor or its Successor Entity;

**Request No. 14:** Copies of all checks issued by, or for the benefit of, the Judgment Debtor or its Successor Entity during the Relevant Period;

**Request No. 15:** All financial statements prepared for, or on behalf of, the Judgment Debtor or its Successor Entity;

**Request No. 16:** All documents related to any statements (monthly or otherwise), canceled checks, deposit slips, passbooks, and check registers for any bank, checking, savings, investments, money market, or mutual fund account held in the Judgment Debtor's (or its Successor Entity's) name during the Relevant Period;

**Request No. 17:** All documents related to any interest the Judgment Debtor or its Successor Entity has or had in any corporation, partnership, limited partnership, venture, joint venture, or any other entity;

**Request No. 18:** All loan documents related to any loans made by or given to the Judgment Debtor or its Successor Entity, including but not limited to promissory notes, security agreements, bills of exchange, and mortgage documents;

**Request No. 19:** All documents related to the current condition of any property owned by, or on behalf, of the Judgment Debtor (or its Successor Entity), or in which they have any interest;

**Request No. 20:** All documents related to the valuation of the Judgment Debtor's and Successor Entity's assets;

**Request No. 21:** All documents related to any transfer of property made by, or on behalf of, the Judgment Debtor or its Successor Entity, including without limitation, any transfer, voluntary or involuntary, of any securities during the Relevant Period;

**Request No. 22:** All documents which refer or relate to any accounts held at any bank or other financial institution or entity in the name of, or for the benefit of the Monday Morning Quarterback business, MMQB, MMQB, Inc. or its Successor Entity, during the Relevant Period. Documents to be produced include, without limitation, all account statements, cancelled checks, deposit slips, wire transfer memos, and all other documents evidencing the balances and transfers of funds into and out of the accounts;

**Request No. 23:** All communications by or to Michael Wolf, Scott Wolf, or Melissa Skolnick related to The Monday Morning Quarterback business, the

9

|  |  |
|---|---|
| | Judgment Debtor or its Successor Entity during the Relevant Period; |
| **Request No. 24:** | All documents related to any transfer of any kind from MMQB, Inc., at any time during the Relevant Period; |
| **Request No. 25:** | All documents related to any transfer of any kind to MMQB, Inc. at any time during the Relevant Period; |
| **Request No. 26:** | All documents related to all assets held or used by MMQB, Inc. or its Successor Entity during the Relevant Period; |
| **Request No. 27:** | All documents related to MMQB, Inc.'s or its Successor Entity's operation and publishing of the Monday Morning Quarterback and any other publication. |
| **Request No. 28:** | If MMQB, Inc. is no longer publishing the Monday Morning Quarterback, all documents related to MMQB Inc's cessation of publishing the Monday Morning Quarterback including but not limited to: |

(a) all contracts related to any sale, purchase, assignment, or transfer of any assets or stock of MMQB, Inc. or its Successor Entity;

(b) all contracts with MMQB, Inc. or its Successor Entity in place on or about the date MMQB, Inc. allegedly ceased publishing the Monday Morning Quarterback including without limitation all contracts related to advertisements, subscriptions, leases, utilities, telephones, internet services, payroll services, credit cards, insurance, and bank accounts;

(c) the identity of the present publisher of the Monday Morning Quarterback including "the latest MMQB Issues" identified on the website at "MMQB.io";

(d) the identity of all persons and entities who owned or controlled the website located at "MMQB.com" during the Relevant Period;

(e) the identity of all persons and entities who owned or controlled the website located at "MBQB.io" during the Relevant Period;

(f) the identity of all persons and entities involved in the production of the Monday Morning Quarterback including "the latest MMQB Issues" identified on the website at "MMQB.io" during the Relevant Period;

(g) the identity of all persons and entities presently publishing the

Monday Morning Quarterback including "the latest MMQB Issues" identified on the website at "MMQB.io";

(g) all agreements with SteelCase, Herman Miller, Haworth, Kimball International, Knoll International, Krueger International, Domore, Jami, Hon Industries, and Teknion (including both advertising and subscription agreements) existing on or about the time MMQB, Inc. ceased publishing the Monday Morning Quarterback; and

(h) all agreements between SteelCase, Herman Miller, Haworth, Kimball International, Knoll International, Krueger International, Domore, Jami, Hon Industries, and Teknion (including both advertising and subscription agreements) and the present publisher of the Monday Morning Quarterback including "the latest MMQB Issues" identified on the website at "MMQB.io"

**Request No. 29:** All documents not previously produced which list, refer or relate to any and all assets or property owned, held or controlled by the Judgment Debtor or its Successor Entity at any time during the Relevant Period;

**Request No. 30:** All documents related to the disposition of any assets or property owned, held, or controlled by the Judgment Debtor during the Relevant Period;

**Request No. 31:** All documents which refer or relate to any and all advertisers, subscribers, customers and any and all other persons or entities which have done or are doing business of any type or nature with the Judgment Debtor or its Successor Entity during the Relevant Period;

**Request No. 32:** All documents which refer or relate to any and all advertisers, subscribers, customers and any and all other persons or entities which (i) have done business of any type or nature with the Judgment Debtor or its Successor Entity during the Relevant Period, and (ii) have at any time or are now doing business with any other entity or operation, including any entity or operation as to which Michael Wolf has any role or control, including as an employee, employer, consultant, owner, officer, director, or principal;

**Request No. 33:** All documents which refer or relate to any relationship between (i) Judgment Debtor (or its Successor Entity) and (ii) Michael Wolf during the Relevant Period; and

**Request No. 34:** All documents which refer or relate to any relationship between (i) the Judgment Debtor (or its Successor Entity) and (ii) Michael Wolf. This would include, but not be limited to, all documents related to any entity, website, or business operation publishing the Monday Morning Quarterback including "the latest MMQB Issues" identified on the website

at "MMQB.io" as well as any other business which Michael Wolf was affiliated with in any way (such as editor, owner, employee, employer, consultant, officer, director, or principal).

## INTERROGATORIES TO RESPONDENT

1. State full name and current address of the person answering these interrogatories and their relationship with the Judgment Debtor as well as the person or entity succeeding the Judgment Debtor as publisher of the Monday Morning Quarterback including "the latest MMQB Issues" on the website located at "MMQB.io" (i.e. its "Successor Entity").

2. Does the Judgment Debtor or its successor Entity own or hold any interest in real estate? If so, with regard to each such interest state the following:

    a. The size and description of the parcel of real estate, including improvements thereon;
    b. The name, address and interest of each person who has or claims to have an ownership interest in the parcel of real estate;
    c. The date the interest in the parcel of real estate was acquired;
    d. The consideration Judgment Debtor or its Successor Entity transferred or paid for the interest in the parcel of real estate;
    e. An estimate of the current fair market value of the parcel of real estate and Judgment Debtor's or its Successor Entity's interest therein; and
    f. The amount of any indebtedness owed on the parcel of real estate and to whom.

3. From January 1, 2014 to the present, did the Judgment Debtor or its Successor Entity have any account or investment of any type, individually, including any checking accounts, savings accounts, investment accounts, certificates of deposit and/or money market accounts? If so, with regard to each such account or investment, state the following:

    a. The type of account or investment;
    b. The name and address of the owners of the account;
    c. The name and address of each person in whose name the account is held; and
    d. Both the high and the low balance of the account or investment, stating the date of the high balance and the date of the low balance.

4. From January 1, 2014 to the present, has the Judgment Debtor or its Successor Entity been the holder of or had access to any safety deposit boxes? If so, state the following:

    a. The address where such box is located;
    b. The number of each box;
    c. A description of the contents of each box during the immediately preceding three years and as of the date of the answer; and
    d. The name and address of any joint or co-owners of such safety deposit box or any trustees holding the box for Judgment Debtor's or its Successor Entity's benefit.

5. From January 1, 2014 to the present, has any person or entity held cash or

property on the Judgment Debtor's or its Successor Entity's behalf? If so, state:

 a. The name and address of the person or entity holding the cash or property; and
 b. The type of cash or property held and the value thereof.

 6. From January 1, 2014 to the present, has the Judgment Debtor or its Successor Entity possessed any interest in any stock, commodities, options, treasury bills or bonds, municipal bonds, certificates of deposit, or any other type of commercial paper or negotiable instrument, including any such instruments held in a street name or in any type of brokerage, institutional, or trust account held in the Judgment Debtor's (or its Successor Entity's) name, or for his benefit? If so, with regard to each such stock, bond, security or investment state:

 a. A description of the stock, bond, security or investment;
 b. The name and address of the entity issuing the stock, bond, security or investment;
 c. The present value of acquisition of the stock, bond, security or investment;
 d. The date of acquisition of the stock, bond, security or investment;
 e. The cost of the stock, bond, security or investment;
 f. The name and address of any other owner or owners in such stock, bond, security or investment; and
 g. If applicable, the date sold and the amount realized therefrom.

 7. Does the Judgment Debtor or its Successor Entity have any outstanding indebtedness or financial obligations, including mortgages, promissory notes, or other oral or written contracts? If so, with regard to each obligation state the following:

 a. The name and address of the creditor;
 b. The form of the obligation;
 c. The date the obligation was initially incurred;
 d. The amount of the original obligation;
 e. The purpose or consideration for which the obligation was incurred;
 f. A description of any security connected with the obligation;
 g. The rate of interest on the obligation;
 h. The present unpaid balance of the obligation;
 i. The dates and amounts of installment payments; and
 j. The date of maturity of the obligation.

 8. Are you holding any money or any other personal or real property in the name of (or for the benefit of) the Judgment Debtor or its Successor Entity? If so, identify:

 a. The amount of money or property;
 b. The account number assorted with of the money or property;

 9. From January 1, 2014 to the present, has the Judgment Debtor or its Successor

Entity sold, transferred, conveyed, encumbered, concealed, damaged or otherwise disposed of any property owned by the Judgment Debtor? If so, with regard to each item of property state:

    a. A description of the property;
    b. The current location of the property;
    c. The purpose or reason for the action taken by Judgment Debtor with regard to the property;
    d. The approximate fair market value of the property;
    e. Whether or not there is written evidence of any such transaction; and
    f. A description of the written evidence.

10. From January 1, 2014 to the present, has the Judgment Debtor or its Successor Entity prepared (or has anyone prepared on their behalf) any financial statements, net worth statements or lists of assets and liabilities pertaining to the Judgment Debtor's or its Successor Entity's property or financial affairs? If so, with regard to each such document state:

    a. The name and address of the person preparing each such document;
    b. The type of document prepared;
    c. The date the document was prepared; and
    d. The location of all copies of each such document.

11. Identify any statements, information and/or documents known to which you claim to be subject to any common law or statutory privilege, and with respect to each interrogatory, specify the legal basis for the claim.

12. Does the Judgment Debtor or its Successor Entity have any debt to the IRS or did it ever fail to report or pay taxes on any income attributed to its name?

13. Did Respondent, the Judgment Debtor, or its Successor Entity have any role in the creation or transfer of the websites "MMQB.com" or "MMQB.io"? If so, state the nature of such role and when it commenced and terminated.

14. Identify all persons and entities involved in any way in the creation or establishment of "MMQB.com" and the respective role of each;

15. Identify all persons and entities involved in any way in the creation or establishment of "MMQB.io" and the respective role of each;

16. When was "MMQB.io" first created or established?

17. Does Respondent own, operate, control, edit or have any other affiliation with the Monday Morning Quarterback currently being published, advertised and available for subscription at MMQB.io ("i.e. the latest MMQB Issues"); and,

18. For what period of time were persons who inputted "MMQB.com" automatically re-directed and transferred to "MMQB.io".