IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
|    Michael A. Wolf, | ) | |
| | ) | |
|         Debtor. | ) | No. 19 C 1978 |
| | ) | |
| | ) | |
| | ) | |
| N. Neville Reid, not individually, | ) | |
| but solely in his capacity as Chapter 7 | ) | |
| Trustee for the bankruptcy estate of | ) | |
| Michael A. Wolf | ) | |
| | ) | (Bankruptcy Case No. 14 B 27066) |
|         Plaintiff, | ) | |
|     v. | ) | |
| | ) | |
| MMQB, Inc., Michael Wolf, | ) | |
| Scott Wolf, et al. | ) | |
| | ) | |
|         Defendants. | ) | |

**RESPONSE TO THIRD-PARTY MICHAEL WOLF'S
MOTION TO DISMISS THESE SUPPLEMENTARY PROCEEDINGS**

Plaintiff, N. Neville Reid, not individually but solely in his capacity as the trustee of the bankruptcy estate of Michael A. Wolf (the "Trustee"), as his response to Michael's Wolf's motion to dismiss supplementary proceedings, states as follows:

**Introduction**

1. On the same date that Michael Wolf ("Michael") filed his response to the Trustee's Renewed Motion For Turnover, he also filed a "Motion To Dismiss These Supplementary Proceedings" (the "Motion To Dismiss"). Michael's Motion To Dismiss is largely duplicative of his response to the Trustee's Renewed Motion For Turnover.

2. Specifically, the Motion To Dismiss argues: (1) "this Court lacks personal

jurisdiction over Third-Party Michael, therefore these supplementary proceedings violate Third-Party Michael's due process rights"; and (2) "these supplementary proceedings are being used in a way by Plaintiff … that is not permitted as a matter of law." [Dkt. 101, p.1]

3. Both of these arguments are made in Michael's response to the Trustee's Motion For Turnover. In fact, the second argument appears to be Michael's primary, albeit incorrect, argument in his response to the Trustee's Motion For Turnover (i.e., that third party citation respondents such as him can never be subject to personal liability in supplementary proceedings). In support of this argument, Michael relies on *Dexia Credit Local v. Rogan*, 629 F.3d 612, 627 (7th Cir. 2010) and *Star Ins. Co. v. Risk Mktg. Grp. Inc.*, 561 F.3d 656 (7th Cir. 2009).

4. As reviewed in more detail in the Trustee's Reply in support of his Renewed Motion For Turnover, the cases cited by Michael do not support his position. In fact, they support the opposite conclusion because issuance of a Citation imposes very real restrictions and affirmative duties upon a third party—backed by the threat of contempt and monetary liability. See, *Shipley v. Hoke*, 2014 IL App (4th) 130810, ¶ 94, 22 N.E.3d 469, 483

5. As noted in the Trustee's reply in support of his renewed Motion for Turnover, third party respondents to Citations can be liable under many theories including all of those espoused by the Trustee, such as: (a) when a citation respondent (such as Michael) is in possession of an asset (the Monday Morning Quarterback publication) of a judgment debtor (MMQB Inc.) and he refuses to turnover that asset (and the income it produces) to the judgment creditor (the Trustee); and (b) when a third party (such as Michael) refuses to deliver to the judgment creditor (the Trustee) property of the "corporate judgment debtor" (MMQB Inc.) in circumstances in which the underlying judgment debtor (MMQB Inc.) could have recovered such property "as for conversion" or "in specie"; and (c) when an asset (the Monday Morning

1

Quarterback publication) of the Judgment Debtor (MMQB Inc.) was fraudulently transferred to a third party (Michael); and even (d) when the third party (Michael d/b/a MMQB) is the successor to the Judgment Debtor ("MMQB Inc.) through fraud or otherwise. All of these scenarios may lead to liability for Michael and all of these scenarios are addressed in the Trustee's Renewed Motion For Turnover and the Trustee hereby incorporates all of these arguments into this Response to Michael's Motion To Dismiss.

6. Having dispensed with Michael's argument that these proceedings are being used in way that is not permitted by law, we will now address Michael's other *new* argument – that this Court lacks personal jurisdiction over him because he no longer is domiciled in Illinois. However, in order to do so, a review of the procedural history of this matter is necessary.

I. **The Procedural History.**

7. For many years, Michael was domiciled in Illinois. In fact, Michael initiated the underlying proceedings which created the judgments by filing a bankruptcy petition in the Northern District of Illinois in order to avoid being sent to jail by the Illinois state judge overseeing his divorce proceedings.[1]

8. After an investigation which included Bankruptcy Rule 2004 discovery of the Debtor and others, the Trustee assigned to administer Michael's bankruptcy filed multiple adversary proceedings which sought, amongst other things, to avoid the fraudulent transfer of the MMQB business. See, Adversary 16 A 00066. Michael participated in all of these cases and proceedings.[2]

---

[1] By filing his Bankruptcy Petition in the Northern District of Illinois, Michael also affirmatively availed himself of this Court's powers by seeking a discharge of his debts.

[2] By participation we mean that Michael filed multiple motions and pleadings and often sought affirmative relief. While doing this, he also pled the Fifth Amendment, refused to comply with discovery and court orders, and was sanctioned before his discharge was denied.

9. Eventually, judgments were entered against Michael, his son, and various sham entities to whom he fraudulently transferred the business including entities he called ZZC Inc. and MMQB Inc. Specifically, monetary judgments in the amount of $2,100,000 (the value of the business transferred) were entered against the person (Scott Wolf) and entities (ZZC Inc. and MMQB Inc.) to whom Michael fraudulently transferred his business. However, because Michael identified himself as the person who transferred the business, he allegedly did not benefit from the transfer (at least yet), and therefore no monetary judgment was entered against Michael. Instead, Michael was denied a discharge of his debts.

10. The Trustee then attempted to collect the $2,100,000 judgments entered against the last transferees of the MMQB business (i.e. MMQB inc. and Scott Wolf) because they had received the benefit of the primary asset of the transferred business (i.e., the Monday Morning Quarterback publication).

11. While the Trustee was attempting to collect the $2,100,000 on behalf of the creditors of the bankruptcy estate, Michael appealed his denial of discharge to this Court while his son appealed the judgments against him and sham entities ZZC Inc and MMQB Inc. in the amount of $2,100,000.

12. While the adversaries were pending, Michael affirmatively appeared in this court and asked for affirmative relief several times. For example, Michael filed motions affirmatively asking this court to "adjudicate the underlying bankruptcy proceedings in the interest of judicial economy…" [Dkt. 44]

13. In the end, this Court denied Michael's motions, affirmed the judgments against Scott and ZZC, Inc. and entered a judgment against MMQB Inc. based on proposed findings of fact and conclusions of law submitted by the bankruptcy court [Dkt. 25]. This Court also granted

the Trustee's motion to amend the Judgment Order and entered an Amended Judgment Order, without objection, on October 27, 2022 [Dkt. 32] The Amended Judgment Order included the judgments in favor of the Trustee and against Scott, MMQB Inc. and Michael.

14. On February 2, 2023, Michael Wolf renewed his Motion affirmatively asking this court to adjudicate the underlying bankruptcy proceedings [Dkt. 54] Once again, this Court denied Michael's motion on March 6, 2023.

15. On April 7, 2023, the Trustee initiated these supplementary proceedings by causing a third party Alias Citation To Discover Assets to be issued and served on Michael. [Dkt. 61]

16. On May 31, 2023, Michael filed a motion "…To Quash Citations, To Strike Plaintiffs Motion For A Rule To Show Cause, And Strike Pending Contempt Hearing, All For Improper Service." [Dkt. 71] In Michael's motion to quash, Michael specifically contested this court's exercise of personal jurisdiction over him. [Dkt. 71, pp. 7-9] Specifically, Michael argued that this Court could not exercise personal jurisdiction over him unless he was properly served. . [Dkt. 71, pp. 7-9] Nowhere in the motion did Michael argue that a lack of minimum contacts deprived this Court of personal jurisdiction over him.

17. After a full briefing on the subject, on March 30, 2024 the Court denied Michael's motion and shortly thereafter ordered Michael to produce the required documents by the first week of May and then appear for his examination on May 14, 2024.

18. On May 6, 2024, Michael Answered the Third Party Citation to Discover Assets. [Dkt. 93-3] Michael's answer did not contest personal jurisdiction.

19. On May 14, 2024 (over one year after he was served) Michael finally appeared for his citation examination via Zoom. However, as part of Michael's continued refusal to obey

4

process and Court orders, Michael's "appearance" was the only part of the Court's order that he obeyed. Specifically, in contempt of this Court's order, Michael failed to produce *any* of the documents he was required to produce by the first week of May or to substantively answer any questions related to the Monday Morning Quarterback publication (the primary asset of MMQB, Inc. that Michael converted and still remains in possession of) at a citation examination taken via zoom.

20. Instead, Michael stated that he refused to produce any documents and did not even look for any. [See, Dkt. 87-2 p. 17, lines 19-24] Michael then refused to answer any substantive questions related to the Monday Morning Quarterback at all.[3] [Dkt. 87-2, *passim*]

21. As a result, the Trustee filed a Second Motion To Show Cause and, on June 20, 2024, the Court granted the Trustee's Second Motion To Show Cause and set an in-person hearing on July 18, 2024. [Dkt. 88]

22. At the second show cause hearing held on July 18, 2024, Michael appeared in person and the Court heard Michael's "excuses" for not complying with the Citation and the Court's orders previously. At that point, the Court very specifically ordered:

> Show cause hearing held and continued to 9/18/24 at 2:00 p.m., at which time a further court−supervised hearing on citation to discover assets will be conducted. Mr. Wolf is personally required to appear. Respondent advised by Court that documents probative of Respondent's relationship to any publication or entity bearing "Monday Morning Quarterback" in its name or that is otherwise affiliated with, connected to, or derived from, MMQB, Inc., are within the scope of the citation. Mr. Wolf is directed to conduct a diligent search for responsive documents in his possession, custody, or control, and to produce responsive documents to the Trustee's counsel on or before August 19, 2024. [Dkt. 90]

23. On or about August 19, 2024, Michael produced his personal bank statements

---

[3] For a more detailed summary of Michael's refusal to answer any substantive questions related to the Monday Morning Quarterback publication (the primary asset of MMQB Inc.) at his first Citation examination, please see Trustee's Second Motion To Show Cause. [Dkt. 87]

5

(revealing where the money from the Monday Morning Quarterback publication was being deposited) and his personal tax returns for the years 2020, 2021 and 2022. [Dkt. 99; Exhibit 11]

24. On September 18, 2025, Michael appeared for the continued show cause hearing and his court–supervised Citation examination but, as part of Michael's continued refusal to obey process and court orders, Michael failed to produce the great majority of the documents he was required to produce.

## II. Michael Waived Any Objection To Personal Jurisdiction And Consented To The Jurisdiction Of This Court.

25. After having presented a Motion To Quash (based on different arguments of personal jurisdiction) which was denied, having *presented motions and defenses* for nearly two years in the supplementary proceedings alone, having *answered* the Third Party Citation To Discover Assets *without contesting jurisdiction* [Dkt. 93-3], having *appeared personally* several times in court, and having been caught red-handed with assets of one of the judgment debtors (with whom *he defended the underlying litigation* in the Northern District of Illinois for nearly a decade), for the *first time* Michael seeks to dismiss these supplementary proceedings based on an argument of insufficient minimum contacts to assert personal jurisdiction over him. It was never a meritorious argument to begin with and any argument he may have had was waived long ago.

26. Michael waived his ability to contest personal jurisdiction based on minimum contacts long ago and he consented to personal jurisdiction here when he filed for bankruptcy in this district, asked the court to withdraw the reference of his bankruptcy proceedings, affirmatively requested this court to adjudicate his bankruptcy proceedings (which included the adversary proceedings from which the judgments arose), responded to the Citation without contesting minimum contacts, and even appeared in this court several times in these supplementary proceedings.

6

27. A party that fails to raise a defense of lack of personal jurisdiction at the appropriate time is deemed to have conferred personal jurisdiction on the court by consent. See *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) citing *Harris Corp.*, 691 F.2d at 1353.

28. In addition, there can be little question that federal courts generally possess the power to protect their judgments by setting aside fraudulent conveyances of the judgment debtor. <u>Thomas, Head & Greisen Emps. Tr. v. Buster</u>, 95 F.3d 1449, 1453–54 (9th Cir. 1996) *citing Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.,* 339 U.S. 684, 694–95, 70 S.Ct. 861, 867–68, 94 L.Ed. 1206 (1950

29. Of course, this Court also can assert personal jurisdiction over Michael because he was domiciled here when he first affirmatively sought relief from this Court. As a matter of law, domicile in the state is alone sufficient to bring an absent defendant within the reach of the state's jurisdiction for purposes of a personal judgment by means of appropriate substituted service. See, *Milliken v. Meyer*, 311 U.S. 457, 462, 61 S. Ct. 339, 342, 85 L. Ed. 278 (1940).

30. Moreover, even if this were simply a diversity case without any prior judgments against Michael and his cohorts, this Court would still be able to assert personal jurisdiction over Michael.

31. A federal court hearing a case pursuant to diversity jurisdiction has jurisdiction over a defendant if a state court in the forum state would have jurisdiction over the defendant. See, e.g., *Philos Techs., Inc. v. Philos & D, Inc.,* 802 F.3d 905, 912 (7th Cir. 2015). Illinois's long-arm statute permits the exercise of personal jurisdiction if it would be permitted under either the Illinois Constitution or the United States Constitution. See 735 ILCS 5/2-209(c). The Seventh Circuit has held that usually "there is no operative difference between Illinois

constitutional and federal constitutional limits on personal jurisdiction." *Philos Techs.*, 802 F.3d at 912 (internal quotation marks omitted). Therefore, federal courts analyze personal jurisdiction under Illinois law using the framework provided by federal due process requirements. See id.

32. Due process permits a court to exercise personal jurisdiction over an out-of-state defendant if it has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement,* 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The contacts with the forum state must be purposely established by the defendant, "such that he should reasonably anticipate being hailed into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985) (internal quotation marks omitted).

33. There are two types of personal jurisdiction, general and specific. In this case, Michael caused the damages to all of his creditors for which the Trustee seeks redress while he was domiciled in this district. Therefore, specific jurisdiction would be appropriate over Michael here.

34. After making his personal jurisdiction argument, Michael's Motion To Dismiss slides back into his arguments regarding the alleged inappropriate use of supplementary proceedings again. The cases Michael cites for this at the end of his motion are easily distinguishable.

35. For example, *Bollore S.A. v. Imp. Warehouse, Inc.*, 448 F.3d 317, 322–25 (5th Cir. 2006) deals with a specific Texas Turnover Statute which is a procedural mechanism that gives Texas courts the power to satisfy a judgment by reaching the assets of a judgment debtor that cannot be attached or levied by ordinary legal process. *In re Hamel*, 180 S.W.3d 226, 228–29 (Tex.App.—San Antonio 2005). The Texas turnover statute is a purely procedural mechanism

and has already been distinguished by Illinois courts who have held that the theories used by the Trustee are appropriate in this case. See, e.g. *Buckley v. Abuzir*, 2014 IL App (1st) 130469, ¶¶ 27-29, 8 N.E.3d 1166, 1176–77.

Wherefore, for all of the reasons stated herein as well as those stated in the Trustee's Reply in support of his Renewed Motion For Turnover, Michael's Motion To Dismiss The Supplementary Proceedings should be denied.

Dated: February 12, 2025  Respectfully Submitted,

N. Neville Reid, not individually, but solely in his capacity as chapter 7 trustee for the bankruptcy estate of Michael A. Wolf,

/s/    Daniel P. Dawson
          One of his attorneys

Daniel P. Dawson (ARDC #6199728)
Nisen & Elliott, LLC
180 N. LaSalle Street, Suite 3600
Chicago, Illinois 60601
(312) 346-7800
ddawson@nisen.com
adrag@nisen.com

9

## CERTIFICATE OF SERVICE

      I, Daniel P. Dawson, certify that on February 13, 2025, I caused a copy of the foregoing to be filed electronically through the Court's CM/ECF filing system which will cause the document to be served upon all parties electronically through the Court's CM/ECF filing system, and also served additional parties as listed on the attached Service List as indicated.

                    /s/ Daniel P. Dawson

Daniel P. Dawson (ARDC #6199728)
Nisen & Elliott, LLC
180 N. LaSalle Street, Suite 3600
Chicago, Illinois 60601
(312) 346-7800
ddawson@nisen.com
adrag@nisen.com

## SERVICE LIST

*Via ECF Service*

| | |
|---|---|
| U.S. Bankruptcy Court, Clerk | ilnb.appeals@ilnb.usCourts.gov |
| United States Trustee | pat.s.layng@usdoj.gov |
| Scott Wolf | scottwolf.0330@gmail.com |

*Via U.S. First Class Mail*

Michael Wolf
11509 Gramercy Park Ave.
Bradenton, FL 34210-8461