
BC

FILED
3/5/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MEN

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| *Supplementary Proceedings* | ) | No. 19-cv-01978 |
| | ) | |
| N. NEVILLE REID, not individually, | ) | |
| but solely in his capacity as Chapter 7 | ) | |
| Trustee of the bankruptcy estate of | ) | |
| Michael A. Wolf, et al., | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED in these** |
| | ) | **ongoing SUPPLEMENTARY** |
| Third-Party Michael Wolf | ) | **PROCEEDINGS** |
| | ) | |
| Defendant. | ) | |

## THIRD-PARTY MICHAEL WOLF'S
## RESPONSE TO PLAINTIFF'S
## MOTION FOR ORDER OF CONTEMPT AGAINST MICHAEL WOLF

Now comes, third-party citation respondent Michael Wolf ("Third-Party Michael"), *pro se*, with his response to Plaintiff N. Neville Reid's ("Plaintiff Reid") motion seeking an order of contempt ("The Contempt Motion") [Dkt. No. 107]. The Contempt Motion must be denied, because Third-Party Michael has already produced all relevant documents, required to be produced, in his possession, and therefore Third-Party Michael has not violated any orders of this Court. Further, in The Contempt Motion, Plaintiff Reid, argues that the documents Third-Party Michael has provided "are sufficient to prove he took and converted the primary asset of the judgment debtor MMQB Inc." Therefore, this Court must dismiss these supplementary proceedings, in addition to denying The Contempt Motion. In support thereof, Third-Party Michael states as follows:

1

## Preliminary Matter

Plaintiff Reid alternatively uses terms interchangeably such as the "MMQB business", "the Monday Morning Quarterback publication", "mmqb.com" and "MMQB, Inc.", however Third-Party Michael rejects that these terms may be used interchangeably.

In November of 2020, Third-Party Michael, as a sole proprietor, began doing business in the State of Florida under the fictitious name **MMQB**, and began operating an email newsletter stylized as *QB*, which customers could subscribe to from the **mmqb.io** website. Plaintiff Reid was unable to understand this, and asked if the **mmqb.io** website was a legal entity, to which Third-Party Michael clarified that he is operating, as a sole proprietor, under the fictitious name MMQB, and that he is **MMQB** (as a as a sole proprietor), and that **mmqb.io** is his website.

Within this email newsletter, is a section titled **Monday Morning Quarterback**, which contains paragraphs of text written by Third-Party Michael, but attributed to **Monday Morning Quarterback** as the author, instead of personally to the name Michael Wolf, as Third-Party Michael attributes **Monday Morning Quarterback** as his *nom de plume*[1], and it is how he is known through the office furniture industry (as a Monday Morning Quarterback[2]).

For simplicity Third-Party Michael will refer to *his* email publication, which *he* created and started in 2020, operating as **MMQB** (as a Florida fictitious name operating as a sole proprietorship) with the **Monday Morning Quarterback** written column representing his *nom de plume,* and available to subscribe to from the **mmqb.io** website, as the "mmqb.io Publication".

The **mmqb.io Publication** is an original publication, created by Third-Party Michael, and is different than what Plaintiff Reid refers to as the "Monday Morning Quarterback publication",

---

[1] A pen name or *nom de plume* is a pseudonym adopted by an author.
[2] **Monday–morning quarterbacks:** *a person who unfairly criticizes or questions the decisions and actions of other people after something has happened.* https://www.britannica.com/dictionary/Monday-morning-quarterback

2

which was published by what Plaintiff Reid refers to as the "MMQB Business", which presumably here in these supplementary proceedings means it was published by MMQB, Inc.

The **mmqb.io Publication** has nothing to do with MMQB, Inc., or any other characterization of the "MMQB Business" made by Plaintiff Reid. No assets, no subscribers, no websites, no domain names, no money, no trademarks – nothing was transferred from MMQB, Inc. to Third-Party Michael. This has been confirmed by both Third-Party Michael and his son Scott, while Plaintiff Reid offers no evidence of (or the description of) an actual transfer of an actual asset, subscriber, website, domain name, money, trademark, etc.

The only actual asset, not created by and operated by Third-Party Michael, described by Plaintiff Reid, is the mmqb.com domain name, and while Third-Party Michael rejects the authenticity of the Plaintiff's unverified exhibits, his own exhibit[3] *seemingly* indicates that MMQB, Inc. was not the owner of the mmqb.com domain name in 2007 or 2016, and no exhibit or allegation exists, at all, suggesting that MMQB, Inc. is or was, or that Third-Party Michael is or was, the owner of the mmqb.com domain name.

Thus, the only verified, under-oath testimony that exists indicates that the **mmqb.io Publication** has nothing to do with MMQB, Inc., and that no assets (or subscribers or domain names or anything else) were transferred from MMQB, Inc. to Third-Party Michael.

### Plaintiff Reid's Document Requests and Their Status

It is well established that a party cannot be held in contempt for failing to produce documents that do not exist or are not within his possession, custody, or control. *United States v. Rylander*, 460 U.S. 752, 757 (1983) ("Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action.").

---

[3] *See* Exhibit 9, *Plaintiff Reid's Renewed Motion*, Dkt. No. 93, pages 12-13.

Plaintiff Reid, in The Contempt Motion, claims that Third-Party Michael "failed to produce any documents in response to the following portions of the Citation To Discover Assets". However, as demonstrated below, Third-Party Michael has produced all relevant documents in response to each and every request (and portion of each request), after he conducted a diligent search of documents within his possession, custody or control, as indicated below. However, for many requests, after a diligent search, Third-Party Michael was not able to locate any documents within his possession, custody or control, also as indicated below:

### Request No. 23:
All communications by or to Michael Wolf, Scott Wolf, or Melissa Skolnick related to The Monday Morning Quarterback business, the Judgment Debtor or its Successor Entity during the Relevant Period;

### *** Third-Party Michael's Response to Request No. 23:
After a diligent search, Third-Party Michael states that no such documents exist within Third-Party Michael's possession, custody, or control. Compliance is impossible. Third-Party Michael can't produce documents that do not exist.

### Request No. 27:
All documents related to MMQB, Inc.'s or its Successor Entity's operation and publishing of the Monday Morning Quarterback and any other publication.

### *** Third-Party Michael's Response to Request No. 27:
After a diligent search, Third-Party Michael states that no such documents exist related to MMQB, Inc., within Third-Party Michael's possession, custody, or control. Compliance is impossible. Third-Party Michael can't produce documents that do not exist.

After a diligent search, Third-Party Michael states that no such documents exist related to any Successor Entity of MMQB, Inc., within Third-Party Michael's possession, custody, or control. Compliance is impossible. Third-Party Michael can't produce documents that do not exist.

4

**After this Court "expanded the definition of the Citation", after a diligent search, Third-Party Michael produced all documents in his possession, custody, or control related to his mmqb.io Publication.**

Produced documents include bank statements and tax returns related to his mmqb.io Publication, operating as a sole proprietorship in the state of Florida, under the fictitious name MMQB.

After a diligent search, Third-Party Michael states that no other documents exist within Third-Party Michael's possession, custody, or control. Additional compliance is impossible. Third-Party Michael can't produce additional documents that do not exist.

Third-Party Michael specifically states, again, that the mmqb.io Publication is not affiliated with, connected to or derived from MMQB, Inc. Further, Third-Party Michael specifically states, again, that he has no relationship, at all, to "Monday Morning Quarterback", the publication, which Plaintiff Reid refers to as an "intangible asset".

## Request No. 28:

If MMQB, Inc. is no longer publishing the Monday Morning Quarterback, all documents related to MMQB Inc's cessation of publishing the Monday Morning Quarterback including but not limited to:
(a) all contracts related to any sale, purchase, assignment, or transfer of any assets or stock of MMQB, Inc. or its Successor Entity;
(b) all contracts with MMQB, Inc. or its Successor Entity in place on or about the date MMQB, Inc. allegedly ceased publishing the Monday Morning Quarterback including without limitation all contracts related to advertisements, subscriptions, leases, utilities, telephones, internet services, payroll services, credit cards, insurance, and bank accounts;
(c) the identity of the present publisher of the Monday Morning Quarterback including "the latest MMQB Issues" identified on the website at "MMQB.io";
(d) the identity of all persons and entities who owned or controlled the website located at "MMQB.com" during the Relevant Period;
(e) the identity of all persons and entities who owned or controlled the website located at "MBQB.io" during the Relevant Period;
(f) the identity of all persons and entities involved in the production of the Monday Morning Quarterback including "the latest MMQB

5

Issues" identified on the website at "MMQB.io" during the Relevant Period;

(g) the identity of all persons and entities presently publishing the Monday Morning Quarterback including "the latest MMQB Issues" identified on the website at "MMQB.io";

(g [sic]) all agreements with SteelCase, Herman Miller, Haworth, Kimball International, Knoll International, Krueger International, Domore, Jami, Hon Industries, and Teknion (including both advertising and subscription agreements) existing on or about the time MMQB, Inc. ceased publishing the Monday Morning Quarterback; and

(h) all agreements between SteelCase, Herman Miller, Haworth, Kimball International, Knoll International, Krueger International, Domore, Jami, Hon Industries, and Teknion (including both advertising and subscription agreements) and the present publisher of the Monday Morning Quarterback including "the latest MMQB Issues" identified on the website at "MMQB.io"

### *** Third-Party Michael's Response to Request No. 28:

After a diligent search, Third-Party Michael states that no such documents exist related to "MMQB Inc's cessation of publishing the Monday Morning Quarterback", within Third-Party Michael's possession, custody, or control. Compliance is impossible. Third-Party Michael can't produce documents that do not exist.

After a diligent search, Third-Party Michael states that no such documents exist related to "(a) contracts or assets or stocks of MMQB, Inc.", within Third-Party Michael's possession, custody, or control. Compliance is impossible. Third-Party Michael can't produce documents that do not exist.

After a diligent search, Third-Party Michael states that no such documents exist related to "(b) contracts related to MMQB, Inc.", within Third-Party Michael's possession, custody, or control. Compliance is impossible. Third-Party Michael can't produce documents that do not exist.

After a diligent search, Third-Party Michael states that no such documents exist related to "(c) the identity of the present publisher of the Monday Morning Quarterback", within Third-Party Michael's possession, custody, or control. Compliance is impossible. Third-Party Michael can't produce documents that do not exist.

After a diligent search, Third-Party Michael states that no such documents exist related to "(d) the website MMQB.com", within Third-Party Michael's possession, custody, or control. Compliance

6

is impossible. Third-Party Michael can't produce documents that do not exist.

After a diligent search, Third-Party Michael states that no such documents exist related to "(e) persons involved in the website MMQB.io", within Third-Party Michael's possession, custody, or control. Compliance is impossible. Third-Party Michael can't produce documents that do not exist. However, Third-Party Michael has already provided information multiple times related to his mmqb.io Publication, including bank statements and tax returns, but after a diligent search, Third-Party Michael states that no other documents exist within Third-Party Michael's possession, custody, or control.

After a diligent search, Third-Party Michael states that no such documents exist related to "(f) persons and entities involved in the production of the Monday Morning Quarterback", within Third-Party Michael's possession, custody, or control. Compliance is impossible. Third-Party Michael can't produce documents that do not exist.

After a diligent search, Third-Party Michael states that no such documents exist related to "(g) persons and entities presently publishing the Monday Morning Quarterback", within Third-Party Michael's possession, custody, or control. Compliance is impossible. Third-Party Michael can't produce documents that do not exist.

After a diligent search, Third-Party Michael states that no such documents exist related to "(g [sic]) agreements with multiple listed companies related to MMQB, Inc.", within Third-Party Michael's possession, custody, or control. Compliance is impossible. Third-Party Michael can't produce documents that do not exist.

After a diligent search, Third-Party Michael states that no such documents exist related to "(h) agreements with multiple listed companies related to MMQB.io", within Third-Party Michael's possession, custody, or control. Compliance is impossible. Third-Party Michael can't produce documents that do not exist.

**Request No. 31:**
All documents which refer or relate to any and all advertisers, subscribers, customers and any and all other persons or entities which have done or are doing business of any type or nature with the Judgment Debtor or its Successor Entity during the Relevant Period;

7

### \*\*\* Third-Party Michael's Response to Request No. 31:

After a diligent search, Third-Party Michael states that no such documents exist within Third-Party Michael's possession, custody, or control. Compliance is impossible. Third-Party Michael can't produce documents that do not exist.

### Request No. 32:

All documents which refer or relate to any and all advertisers, subscribers, customers and any and all other persons or entities which (i) have done business of any type or nature with the Judgment Debtor or its Successor Entity during the Relevant Period, and (ii) have at any time or are now doing business with any other entity or operation, including any entity or operation as to which Michael Wolf has any role or control, including as an employee, employer, consultant, owner, officer, director, or principal;

### \*\*\* Third-Party Michael's Response to Request No. 32:

After a diligent search, Third-Party Michael states that no such documents exist within Third-Party Michael's possession, custody, or control. Compliance is impossible. Third-Party Michael can't produce documents that do not exist.

### Request No. 33:

All documents which refer or relate to any relationship between (i) Judgment Debtor (or its Successor Entity) and (ii) Michael Wolf during the Relevant Period;

### \*\*\* Third-Party Michael's Response to Request No. 33:

After a diligent search, Third-Party Michael states that no such documents exist within Third-Party Michael's possession, custody, or control. Compliance is impossible. Third-Party Michael can't produce documents that do not exist.

### Request No. 34:

All documents which refer or relate to any relationship between (i) the Judgment Debtor (or its Successor Entity) and (ii) Michael Wolf. This would include, but not be limited to, all documents related to

8

any entity, website, or business operation publishing the Monday Morning Quarterback including "the latest MMQB Issues" identified on the website at "MMQB.io" as well as any other business which Michael Wolf was affiliated with in any way (such as editor, owner, employee, employer, consultant, officer, director, or principal).

**\*\*\* Third-Party Michael's Response to Request No. 34:**

After a diligent search, Third-Party Michael states that no such documents exist related to the Judgment Debtor, within Third-Party Michael's possession, custody, or control. Compliance is impossible. Third-Party Michael can't produce documents that do not exist.

After a diligent search, Third-Party Michael states that no such documents exist related to any Successor Entity, within Third-Party Michael's possession, custody, or control. Compliance is impossible. Third-Party Michael can't produce documents that do not exist.

**After this Court "expanded the definition of the Citation", after a diligent search, Third-Party Michael produced all documents in his possession, custody, or control related to his mmqb.io Publication.**

Produced documents include bank statements and tax returns related to his mmqb.io Publication, operating as a sole proprietorship in the state of Florida, under the fictitious name MMQB.

After a diligent search, Third-Party Michael states that no other documents exist within Third-Party Michael's possession, custody, or control. Additional compliance is impossible. Third-Party Michael can't produce additional documents that do not exist.

Third-Party Michael specifically states, again, that the mmqb.io Publication is not affiliated with, connected to or derived from MMQB, Inc. Further, Third-Party Michael specifically states, again, that he has no relationship, at all, to "Monday Morning Quarterback", the publication, which Plaintiff Reid refers to as an "intangible asset".

9

**Conclusion**

After a diligent search, Third-Party Michael states that he has no additional documents to produce, and as indicated above, specifically addressed each individual document production request, and has already provided, after a diligent search, all documents within his possession, custody or control, that are responsive to any and all document production requests.

Third-Party Michael was ordered by this Court to do the following:

> Respondent advised by Court that documents probative of Respondent's relationship to any publication or entity bearing "Monday Morning Quarterback" in its name or that is otherwise affiliated with, connected to, or derived from, MMQB, Inc., are within the scope of the citation. Mr. Wolf is directed to conduct a diligent search for responsive documents in his possession, custody, or control, and to produce responsive documents to the Trustee's counsel on or before August 19, 2024.

Third-Party Michael has fully complied with this Court's order. As already explained, Third-Party Michael's mmqb.io Publication is not related to "Monday Morning Quarterback", the "intangible asset" of a "magazine" as defined by Plaintiff Reid. Further, the mmqb.io Publication is not affiliated with, connected to, or derived from MMQB, Inc.

However, Third-Party Michael did produce all documents in his possession, custody, or control related to his mmqb.io Publication, and provided testimony to confirm the same.

Third-Party Michael's diligent search included reviewing all personal and business financial records, reviewing past communications and correspondence and checking for any contracts, agreements, or records related to MMQB Inc. or any alleged successor entity. No additional responsive materials were located.

Contempt requires clear and convincing evidence of noncompliance. *Autotech v. Integral*, 499 F.3d 737, 751 (7th Cir. 2007) ("In order to prevail on a contempt petition, the complaining

party must demonstrate by clear and convincing evidence that the respondent has violated the express and unequivocal command of a court order.").

Plaintiff Reid has not provided any such evidence. Plaintiff Reid has not described any responsive documents within Third-Party Michael's possession, custody, or control that were not produced. Plaintiff Reid hasn't even described any actual assets belonging to MMQB, Inc that he believes are now in Third-Party Michael's possession, other than an "intangible asset" of a "magazine", nor has Plaintiff Reid provided any evidence to suggest that documents related to *alleged* assets were withheld, or even what said *alleged* assets even are (other than "a magazine").

Further, Plaintiff Reid admits in The Contempt Motion, in paragraph 21, that "the few documents Michael produced are sufficient to prove he took and converted the primary asset of the judgment debtor MMQB Inc.[4]"

Therefore, Plaintiff Reid already believes that the documents produced by Third-Party Michael prove "the conversion" of MMQB Inc. assets, and Plaintiff Reid has not described any documents that are known to have been withheld or otherwise exist and were not produced.

For example, Plaintiff Reid complains that no documents were produced related to, "All communications by or to Michael Wolf, Scott Wolf, or Melissa Skolnick related to The Monday Morning Quarterback business, the Judgment Debtor or its Successor Entity during the Relevant Period;", yet Third-Party Michael, under oath, swore that no such documents exist.

Therefore, according to *Autotech*, Plaintiff Reid must provide evidence that such documents do exist – something that Plaintiff has failed to do.

---

[4] Third-Party Michael, of course, denies that he has any assets belonging to MMQB Inc., and denies converting anything or having anything to do with MMQB Inc. But if he did have said assets, then Plaintiff Reid has plead himself out of these supplementary proceedings.

11

Once again, Plaintiff Reid has plead himself out of court. He claims that the documents provided by Third-Party Michael somehow "prove conversion", yet complains that additional documents were not produced – without providing any evidence that any additional documents exist, or describing said documents, etc.

What Plaintiff Reid has done, however, is confirm that this Court must dismiss these supplementary proceedings, with prejudice, as a matter of law, as Plaintiff Reid admits that these proceedings were initiated to "prove conversion" and obtain a personal liability judgment against Third-Party Michael for taking and converting "the primary asset of the judgment debtor MMQB Inc," which Plaintiff Reid argues has been "proven" by "the few documents Michael produced."

Plaintiff Reid describes this asset as an "intangible asset".

> "Intangible assets of a company include magazines and similar works. As a result, the Monday Morning Quarterback (a trade magazine) was an asset of MMQB Inc. Therefore, this asset of MMQB Inc. (one of the Judgment Debtors), including its income, must now be turned over to the Trustee."
>
> *Renewed Motion to Compel*, Dkt. No. 93, Page 7.

Plaintiff Reid specifically argues that Third-Party Michael is in possession of the "primary intangible asset" (Dkt. No. 105, Page 13):

> In this case, Michael converted and remains in possession of the primary intangible asset (the Monday Morning Quarterback publication) of MMQB Inc. (the Judgment Debtor).

Illinois law does not recognize a claim for conversion of intangible property. *Walgreen Co. v. Peters*, 21 C 2522, 4 (N.D. Ill. Oct. 1, 2021) ("Peters argues that Illinois law does not recognize a claim for replevin or conversion of intangible property. As articulated in the Court's order on Walgreen's motion for preliminary injunction, the Court agrees. See [67]. Although the Court recognizes the split in authority on whether Illinois law recognizes replevin and conversion claims

12

for intangible property, the Court is bound by the Seventh Circuit's direction in *Am. Nat'l Ins. Co. v. Citibank, N.A.*, 543 F.3d 907, 910 (7th Cir. 2008). What's more, other courts similarly conclude that Illinois law does not recognize a claim for conversion of intangible property…")

Even if Illinois law did recognize a claim for conversion, such a claim is not properly brought, as a matter of due process, within supplementary proceedings.

These third-party citation supplementary proceedings only serve one purpose under Illinois law: To allow Plaintiff Reid to find assets belonging to MMQB, Inc., which are currently being held by Third-Party Michael, and to apply those assets to satisfy the judgment against MMQB, Inc. *Hayward v. Scorte*, 444 Ill. Dec. 406, 411 (Ill. App. Ct. 2020) ("These proceedings also allow plaintiffs to find any assets of the judgment debtor being held by third parties and apply those assets to satisfy the judgment. *R & J Construction Supply Co. v. Adamusik*, 2017 IL App (1st) 160778, ¶ 7, 410 Ill.Dec. 449, 70 N.E.3d 266."). Supplementary proceedings are post-judgment processes that support the judgment creditor in asset discovery and final satisfaction of judgment. *Star Ins. Co. v. Risk Mktg. Group, Inc.*, 561 F.3d 656, 662-663 (7th Cir. 2009).

The Seventh Circuit also agrees that the scope of these supplementary proceedings are very limited, and are only intended to locate assets that belong to MMQB, Inc, which are now being held by Third-Party Michael. *Dexia Credit Local v. Rogan*, 629 F.3d 612, 623 (7th Cir. 2010) ("we held that the allegations that must be made to pierce the corporate veil do not fall within the scope of supplementary proceedings wherein the only relevant inquiries are: "(1) whether the judgment debtor is in possession of assets that should be applied to satisfy the judgment; or (2) **whether a third party is holding assets of the judgment debtor that should be applied to satisfy the judgment.**" *Star Ins. Co.*, 561 F.3d at 660-61 (citing *Pyshos v. Heart-Land Dev. Co.*, 258 Ill.App.3d 618, 196 Ill.Dec. 889, 630 N.E.2d 1054, 1057 (1994)).") (Emphasis added.)

13

By continuing to argue conversion (after previously arguing successor liability), Plaintiff Reid has demonstrated, in every filing, that he is only interested in obtaining a personal liability judgment against Third-Party Michael, under theories such as fraudulent transfer, successor entity and conversion. **Plaintiff Reid is not interested in the actual assets of the Judgment Debtor – which is the only purpose of these *instant* supplementary proceedings under Illinois law.**

To win a motion for civil contempt, a party must prove "by clear and convincing evidence" that the opposing party violated a court order. *Stotler and Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989); *Hayden v. Oak Terrace Apartments*, 808 F.2d 1269, 1270 (7th Cir. 1987). The district court "must be able to point to a decree from the court `which sets forth in specific detail an unequivocal command' which the party in contempt violated." *Stotler*, 870 F.2d at 1163 (citations omitted). Here, Plaintiff Reid only complains that Third-Party Michael did not produce any documents in response to some document requests. This is true, because Third-Party Michael, after a diligent search, was not able to locate any documents. Plaintiff Reid has not provided any evidence, much less clear and convincing evidence, that said documents exist.

Third-Party Michael has not violated any order – and specifically provided all documents in Third-Party Michael's possession, custody, or control related to Third-Party Michael's mmqb.io Publication. Third-Party Michael is unable to produce documents which do not exist. Plaintiff Reid has not described the existence of any documents which have not been produced.

***WHEREFORE***, for the foregoing reasons, Third-Party Michael prays that this Court, as a matter of law, deny all relief requested in The Contempt Motion, because Third-Party Michael has:

(1) Conducted a diligent search for all responsive documents;
(2) Testified under oath that he is not affiliated with the Judgment Debtor or any Successor Entity;
(3) Provided all documents related to his mmqb.io Publication; and
(4) Fully complied with this Court's order.

14

Further, Third-Party Michael prays that this Court, further incorporates Plaintiff Reid's statements about conversion and "intangible assets", made in The Contempt Motion, into its decision to dismiss these supplementary proceedings, as all evidence suggests that Plaintiff Reid is attempting to obtain a personal monetary liability judgment against Third-Party Michael under theories such as conversion, successor liability and fraudulent transfer, within a third-party citation initiated proceedings under Illinois Law.

These supplementary proceedings only put Third-Party Michael on notice, as a matter of due process, that he could face monetary liability if he transfers any actual assets belonging to MMQB, Inc that are in his possession… which Plaintiff Reid argues that he has not done.

Instead, Plaintiff Reid argues that said assets have been *converted*. To prosecute such claims, Plaintiff Reid is required to file and serve an actual complaint (at least, according to all Illinois Courts and the Seventh Circuit). In any event, Third-Party Michael denies all of these allegations, denies any involvement with MMQB Inc, denies that he has any assets related to MMQB Inc, and demands a jury trial (in the correct venue as a matter of due process) to litigate such claims that have been made within a turnover motion within supplementary proceedings initiated with the *alleged* proper service of a third-party citation – which only exists to facilitate the turnover of actual assets, belonging to the judgment debtor, currently in the possession of the Third-Party, to be applied to the outstanding judgment against the judgment debtor.

Dated: March 6, 2025

Prepared By: Michael Wolf
11509 Gramercy Park Ave
Bradenton, FL 34211
(601) 780-9585, wolflegalusa@gmail.com

Respectfully Submitted,

/s/Michael Wolf
Michael Wolf, *pro se*

## CERTIFICATE OF SERVICE

      I, Michael Wolf, hereby certify that I caused a true and correct copy of the foregoing *THIRD-PARTY MICHAEL WOLF'S RESPONSE TO PLAINTIFF'S MOTION FOR ORDER OF CONTEMPT AGAINST MICHAEL WOLF*, and the documents referred to therein, to be served on the parties listed below via third-party commercial carrier and/or mail, and/or via email, and/or via fax, as well as electronically via the Court's CM/ECF system (all as indicated below on the service list), on the 6th day of March, 2025 (depending on the time zone).

**SERVICE LIST**

via ELECTRONIC MAIL (and via CM/ECF where noted):

| | | |
|---|---|---|
| N. Neville Reid | CM/ECF | nreid@foxswibel.com |
| Daniel Patrick Dawson | CM/ECF | adrag@nisen.com, ddawson@nisen.com |
| U.S. Bankruptcy Court, Clerk | | ilnb.appeals@ilnb.usCourts.gov |

United States Trustee
adam.g.brief@usdoj.gov
adam.brief@usdoj.gov
USTP.Region11@usdoj.gov

    Dated: March 6, 2025

                                            /s/Michael Wolf