**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re MICHAEL WOLF, | ) |
| | ) |
| Debtor. | ) No. 19-cv-01978 |
| | ) |
| N. NEVILLE REID, not individually, | ) Judge John J. Tharp, Jr. |
| but solely in his capacity as Chapter 7 | ) |
| Trustee for the bankruptcy estate of | ) |
| Michael A. Wolf, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MMQB, INC., MICHAEL WOLF, | ) |
| SCOTT WOLF, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER**

The Trustee's motion for contempt [107] is granted, for the reasons explained below. Michael Wolf is directed to produce all documents responsive to the Trustee's citation to discover assets, with the explicit direction that the term "Successor Entity" includes mmqb.io, by 5/5/2026. This Court will levy a fine of $100 per day after that date until Mr. Wolf has fully complied.

**STATEMENT**

**A. Background**

The long and convoluted history of this case is described in detail in this Court's 2022 Order. Mem. Op. 3–12, ECF No. 24. Suffice it for now to say the following: this Court affirmed a bankruptcy judgment against MMQB, Inc. for $2.1 million. In pursuit of collecting that judgment, the Trustee issued a citation to discover assets to Michael Wolf.[1] To put it mildly, the Trustee has encountered difficulties in executing that citation.

Michael started and ran a publication called "Monday Morning Quarterback," a trade publication for the commercial furniture industry. Mem. Op. 3. In 2012, with Michael facing a divorce, ownership of Monday Morning Quarterback was transferred multiple times, ending up in the hands of MMQB, Inc. (which was solely owned by Michael's son, Scott Wolf). *Id.* at 3–4.

---

[1] Because Michael Wolf's son, Scott Wolf, is also involved in this litigation, the Court will refer to Michael Wolf as "Michael" for clarity.

After the bankruptcy judgment was entered against MMQB, Inc., Michael began publishing an e-mail newsletter called "Monday Morning Quarterback," which Michael refers to as mmqb.io. Tr. Proceedings 10: 22-24, ECF No. 92; *id.* at 17 ¶¶ 22–24. In hopes of discovering assets that belong to MMQB, Inc., the Trustee's citation to Michael asked for, inter alia, documents "related to MMQB, Inc.'s or its Successor Entity's operation and publishing of the Monday Morning Quarterback and any other publication," along with subscriber, advertiser, and customer lists. Mot. Contempt 4–5, ECF No. 107. Michael did not produce documents responsive to many of the Trustee's requests, explaining that he did not believe mmqb.io to be a Successor Entity. Tr. Proceedings 17:10-17.

In May 2023, the Trustee first moved to show cause why Michael should not be held in contempt for failing to produce responsive documents. Mot. Show Cause, ECF No. 65. This Court ordered Michael to produce those documents on April 18, 2024. Min. Entry, ECF No. 86. When Michael still did not produce the responsive documents, the Trustee once again moved for a show-cause hearing in June 2024. Second Mot. Show Cause, ECF No. 87. After the July 18, 2024 show cause hearing, this Court ordered Michael to "conduct a diligent search for responsive documents in his possession, custody, or control, and to produce responsive documents to the Trustee's counsel on or before August 19, 2024." Min. Entry, ECF No. 90. This Court held an evidentiary deposition of Michael on September 18, 2024 regarding the citation.

Still unsatisfied with the documents Michael produced, the Trustee moved for an order of contempt against Michael. The Trustee claims—and Michael agrees—that Michael has not produced any documents in response to a number of the Trustee's requests. Mot. Contempt 3 ¶ 14; Resp. 4–9, ECF No. 112. The Trustee's motion is now before this Court.

### B. Motion for Contempt

To prevail on a motion for contempt, the Trustee must show by clear and convincing evidence that:

> (1) the Order sets forth an unambiguous command; (2) [Michael] violated that command; (3) [Michael's] violation was significant, meaning it did not substantially comply with the Order; and (4) [Michael] failed to take steps to reasonable [sic] and diligently comply with the Order.

*FTC v. Trudeau*, 579 F.3d 754, 763 (7th Cir. 2009) (quoting *Prima Tek II, LLC v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 542 (7th Cir. 2008)). A willful violation is not needed; the Court need only find that Michael "has not been reasonably diligent and energetic in attempting to accomplish what was ordered." *Goluba v. School Dist. of Ripon*, 45 F.3d 1035, 1037 (7th Cir. 1995) (citation modified).

This Court's July 18, 2024 order was unambiguous. It directed Michael to produce responsive documents and advised Michael that "documents probative of Respondent's relationship to *any* publication or entity bearing 'Monday Morning Quarterback' in its name or that is otherwise affiliated with, connected to, or derived from, MMQB, Inc., are within the scope of the citation." Min. Entry (emphasis added). Despite that clear order, Michael claims that "[c]ompliance is impossible" with respect to each of the citations set forth below in Appendix A,

based on his assertion that mmqb.io is not related to the original Monday Morning Quarterback. Resp. 3–10. But Michael cannot refuse to comply with this Court's unambiguous order simply because he disagrees with it. Mmqb.io is an e-newsletter using the name Monday Morning Quarterback and is therefore clearly covered by this Court's order.

Michael's violation of the order was significant. The crux of the underlying issue in this case is whether mmqb.io is the same entity as the Monday Morning Quarterback owned by MMQB, Inc. The Trustee says yes; Michael says no. Answers to the Trustee's citation requests—including, for example, mmqb.io's advertisers and subscribers—are critical to resolving that issue.

It is clear, moreover, that Michael could comply with the order. Michael admitted during his September 18 deposition (*after* this Court's order) that he "did not produce any subscriber lists for mmqb.io because mmqb.io is not related to MMQB, Inc. and is not a successor entity." Tr. Proceedings 26:7-9. He said the same for mmqb.io's advertisers list. *Id.* at 26:25–27:1-3. But despite now claiming that "no such documents exist," Resp. 7–8, Michael testified at his deposition that he "could produce a list of the advertisers who advertise with mmqb.io, yes, and I will be happy to." Tr. Proceedings 27:23-24; *see also id.* at 28:19-21 ("[I]f you are requesting a subscriber list to mmqb.io not being a successor entity, I will be glad to provide that."). Michael did not take steps to reasonably and diligently comply with the order.

*     *     *

Because Michael Wolf substantially violated this Court's clear order, the Trustee's motion for contempt [107] is granted. Michael must produce all documents responsive to the citation requests in Appendix A, with the understanding that "Successor Entity" includes mmqb.io. Failure to do so will result in a $100 fine per day for noncompliance.

_John J. Tharp, Jr._

_____
John J. Tharp, Jr.
United States District Judge

Date: April 24, 2026

**Appendix A**

23. All communications by or to Michael Wolf, Scott Wolf, or Melissa Skolnick related to The Monday Morning Quarterback business, the Judgment Debtor or its Successor Entity during the Relevant Period;

27. All documents related to MMQB, Inc.'s or its Successor Entity's operation and publishing of the Monday Morning Quarterback and any other publication.

28. If MMQB, Inc. is no longer publishing the Monday Morning Quarterback, all documents related to MMQB Inc's cessation of publishing the Monday Morning Quarterback including but not limited to:

> (a) all contracts related to any sale, purchase, assignment, or transfer of any assets or stock of MMQB, Inc. or its Successor Entity;
> (b) all contracts with MMQB, Inc. or its Successor Entity in place on or about the date MMQB, Inc. allegedly ceased publishing the Monday Morning Quarterback including without limitation all contracts related to advertisements, subscriptions, leases, utilities, telephones, internet services, payroll services, credit cards, insurance, and bank accounts;
> (c) the identity of the present publisher of the Monday Morning Quarterback including "the latest MMQB Issues" identified on the website at "MMQB.io";
> (d) the identity of all persons and entities who owned or controlled the website located at "MMQB.com" during the Relevant Period;
> (e) the identity of all persons and entities who owned or controlled the website located at "MBQB.io" during the Relevant Period;
> (f) the identity of all persons and entities involved in the production of the Monday Morning Quarterback including "the latest MMQB Issues" identified on the website at "MMQB.io" during the Relevant Period;
> (g) the identity of all persons and entities presently publishing the Monday Morning Quarterback including "the latest MMQB Issues" identified on the website at "MMQB.io";
> (g) all agreements with SteelCase, Herman Miller, Haworth, Kimball International, Knoll International, Krueger International, Domore, Jami, Hon Industries, and Teknion (including both advertising and subscription agreements) existing on or about the time MMQB, Inc. ceased publishing the Monday Morning Quarterback; and
> (h) all agreements between SteelCase, Herman Miller, Haworth, Kimball International, Knoll International, Krueger International, Domore, Jami, Hon Industries, and Teknion (including both advertising and subscription agreements) and the present publisher of the Monday Morning Quarterback including "the latest MMQB Issues" identified on the website at "MMQB.io"

31. All documents which refer or relate to any and all advertisers, subscribers, customers and any and all other persons or entities which have done or are doing business of any type or nature with the Judgment Debtor or its Successor Entity during the Relevant Period;

32. All documents which refer or relate to any and all advertisers, subscribers, customers and any and all other persons or entities which (i) have done business of any type or nature with the Judgment Debtor or its Successor Entity during the Relevant Period, and (ii) have at any time or are now doing business with any other entity or operation, including any entity or operation as to which Michael Wolf has any role or control, including as an employee, employer, consultant, owner, officer, director, or principal;

33. All documents which refer or relate to any relationship between (i) Judgment Debtor (or its Successor Entity) and (ii) Michael Wolf during the Relevant Period;

34. All documents which refer or relate to any relationship between (i) the Judgment Debtor (or its Successor Entity) and (ii) Michael Wolf. This would include, but not be limited to, all documents related to any entity, website, or business operation publishing the Monday Morning Quarterback including "the latest MMQB Issues" identified on the website at "MMQB.io" as well as any other business which Michael Wolf was affiliated with in any way (such as editor, owner, employee, employer, consultant, officer, director, or principal).